PAUL B. SCHOFIELD v. THE GREAT ATLANTIC & PACIFIC TEA COM-
PANY, INC., SELF-INSURER

No. 7910IC129

(Filed 6 November 1979)

1. **Master and Servant § 75— workmen's compensation—emergency—employee's selection of doctor—medical expenses covered**
    Treatment received by plaintiff following an injury by accident arising out of and within the scope of his employment was of an emergency nature,

though it extended over a period of 17 months, and plaintiff was justified in selecting a doctor of his own choosing and continuing treatment with that doctor where the evidence tended to show that plaintiff was in Reidsville while the doctors who had been treating him were in Charlotte; his knee had swollen to four times its normal size; the knee was exuding pus in a stream the size of a man's finger; the doctor who treated plaintiff testified that plaintiff was about to lose his leg or his life; it was 11:00 p.m. when plaintiff sought treatment; and defendant had notified plaintiff that it would not be responsible for the cost of medical care after a date which had already passed when plaintiff sought treatment, and it was therefore incumbent on the plaintiff to look after himself.

2. **Master and Servant § 75— workmen's compensation—medical expenses—substituted physician—approval by Industrial Commission**

In a workmen's compensation proceeding to recover the costs of medical care, there was no merit to defendant's contention that plaintiff failed to comply with his obligation to notify the Industrial Commission and the employer of his selection of a different physician, since G.S. 97-25, providing that the Industrial Commission must approve of the substitute physician in order for his fees to be covered, does not require that such approval be given in advance, and the Industrial Commission did approve the costs of medical care under the circumstances approximately two and one-half years after they were incurred.

3. **Master and Servant § 85— appeal from Industrial Commission—jurisdiction of Commission**

The Industrial Commission had no jurisdiction over the present action while it was before the Court of Appeals.

Judge VAUGHN dissenting.

APPEAL by defendant from order of North Carolina Industrial Commission entered 8 December 1978. Heard in the Court of Appeals 16 October 1979.

This is the second time this case has been before this Court. *Schofield v. Tea Co.*, 32 N.C. App. 508, 232 S.E. 2d 874 (1977). We will repeat only such facts as required for an understanding of our decision.

The plaintiff was injured in an accident arising out of and within the scope of his employment with the defendant in Statesville on 29 April 1972. The defendant, a self-insurer, provided medical care under the Workmen's Compensation Act, and the plaintiff was treated by Drs. Carr and Wrenn in Charlotte. Treatment up until 5 June 1974 included several operations on plaintiff's knee. Subsequently, plaintiff's entire knee was replaced, and treatment by Drs. Carr and Wrenn continued for nearly two years.

On 3 September 1974, the defendant employer sent a notice to the plaintiff advising him that it would not be responsible for any medical payments after 5 June 1974, and the plaintiff filed claim with the North Carolina Industrial Commission. Thereafter, Deputy Commissioner Shuford on 1 April 1976 made an award holding the defendant liable for the cost of plaintiff's medical care from and after 5 June 1974 which would tend to lessen the plaintiff's disability.

The Full Commission affirmed the results of the deputy commissioner in an award filed on 12 July 1976; and this Court affirmed the award on 16 March 1977. A petition to the Supreme Court for a discretionary review was denied on 3 May 1977.

Thereafter, in an order filed 21 June 1977, the Full Commission noted that the parties were unable to agree on certain unpaid medical costs. Further hearing on the matter was held before Deputy Commissioner John Charles Rush, and an award filed on 12 June 1978. Deputy Commissioner Rush heard the testimony of Dr. Frederick R. Klenner, made findings of fact, conclusions of law, and an award substantially as follows:

1. That the plaintiff sustained a change in condition for the worse on 19 July 1974 and had not reached the end of the healing period or maximum improvement as of the date of hearing; that the defendant employer is responsible for the payment of all medical expenses and additional medical treatment which will tend to lessen the plaintiff's disability.

2. That the defendant employer's appeal of the deputy commissioner's ruling to the Full Commission and then to the Court of Appeals removed the matter from the jurisdiction of the Industrial Commission.

3. That on or about 9 April 1976, the plaintiff was visiting or residing with his sister in Reidsville, North Carolina, when his knee became substantially worse; that the knee was swollen and infected, at which time he saw Dr. Frederick R. Klenner.

4. That Dr. Klenner examined the plaintiff and received a case history from the plaintiff only; that he found the plaintiff's knee swollen four times its normal size and draining pus

"the size of a man's finger"; that in his opinion the plaintiff was about to lose his leg or his life on 9 April 1976.

5. That Dr. Klenner treated the plaintiff's knee with drugs and irrigation almost daily for 17 months in order to control the infection; that he did not have permission of the defendant employer or the Industrial Commission to treat the plaintiff.

(The testimony of Dr. Klenner revealed that he did not file a claim with the Industrial Commission for about 15 months after beginning of treatment.)

Deputy Commissioner Rush concluded that the plaintiff was confronted with an emergency situation with respect to his knee condition due to the defendant employer's failure to provide medical care and due to the defendant employer's series of appeals, and, accordingly, he sought and received treatments from a doctor of his own choosing. The plaintiff therefore was entitled to have the reasonable cost of such medical services paid by the defendant employer as provided by G.S. 97-25.

An award was entered accordingly.

Thereafter, defendant moved that the deputy commissioner's opinion and award be held in abeyance until the testimony of Dr. Frank Bassett of Duke Hospital could be taken and considered, which would tend to show contrary findings and conclusions, particularly to the effect that the treatment by Dr. Klenner over a 17-month period of time was not of an emergency nature and was ineffective.

The plaintiff filed a motion objecting to the defendant's motion. An opinion and award in this matter was issued by Deputy Commissioner Rush denying the defendant's motion, and application for review was then filed with the Full Commission. The Full Commission affirmed.

Defendant employer gave notice of appeal to this Court.

*Caudle, Underwood & Kinsey, by Lloyd C. Caudle and John H. Northey III, for defendant appellant.*

*R. A. Collier, for plaintiff appellee.*

Schofield v. Tea Co.

HILL, Judge.

The issues raised by the defendant appellant for our determination are:

1. Was the treatment received by the appellee of an emergency nature?

2. Was notice to and approval of the Commission and the defendant required prior to plaintiff's treatment by Dr. Klenner?

3. When an employer notifies an employee of its refusal to pay medical costs incurred after a certain date and continues to appeal award decisions covering liability for surgical procedures made by the Industrial Commission favorable to the employee, is the matter temporarily removed from the jurisdiction of the Industrial Commission?

[1] The answer to the first and third questions is in the affirmative. The second question is answered in the negative.

G.S. 97-25 provides that:

If in an emergency on account of the employer's failure to provide the medical or other care as herein specified a physician other than provided by the employer is called to treat the injured employee, the reasonable cost of such service shall be paid by the employer if so ordered by the Industrial Commission: Provided, however, if he so desires, an injured employee may select a physician of his own choosing to attend, prescribe, and assume the care and charge of his case, subject to the approval of the Industrial Commission.

The defendant contends that an emergency does not exist over a 17-month period. G.S. 97-25 does not define an emergency. What may be an emergency under one set of circumstances may not qualify as such under another.

Look at the record in this case:

1. Plaintiff was in Reidsville, and the physician and surgeon who had been treating him were in Charlotte.

2. The knee had swollen to four times its normal size.

3. The knee was exuding pus in a stream the size of a man's finger.

4. The testimony of Dr. Klenner indicated that the plaintiff was about to lose his leg or his life.

5. It was 11:00 p.m. when plaintiff sought treatment.

6. The defendant had notified the plaintiff that it would not be responsible for the cost of medical care after 5 June 1974. Hence it was incumbent on the plaintiff to look after himself.

The Commission found these facts to constitute an emergency. We agree.

The employer contends that G.S. 97-25 was not intended to include routine day-to-day treatment provided over a long period (17 months in this case). We cannot say at which point there ceased to be an emergency, but the facts indicate that one did exist on 9 April 1976. Accordingly, under the provisions of G.S. 97-25, Dr. Klenner must be reimbursed by defendant for the emergency treatment.

Furthermore, plaintiff was justified in *continuing* his treatment with Dr. Klenner. The last sentence of G.S. 97-25 makes it clear that plaintiff had the right to select a physician of his own choosing, subject to the approval of the Industrial Commission, to "*assume* the care and charge of his case." G.S. 97-25 (Emphasis added.) Considering the facts set out establishing the emergency, the Commission has ruled that plaintiff was justified in going to Dr. Klenner and justified in having the doctor assume the care and charge of his case. We concur.

Further, the employer contends that it was providing treatment for the employee through Dr. Carr and Dr. Wrenn, both of whom were approved by the employer and the Industrial Commission, and it was the plaintiff's failure to return to his approved physicians in Charlotte that precipitated his need for treatment for which he selected Dr. Klenner. We cannot agree. To reiterate what we have already stated, the defendant had notified the plaintiff that it would not be responsible for the costs of medical care after 5 June 1974. The plaintiff had every reason to believe that the defendant would not pay for treatment if he returned to

Charlotte. The defendant's liability was established on 3 May 1977, well over a year after the emergency arose.

During the interim, Dr. Klenner in Reidsville treated the plaintiff with massive doses of antibotics and "soaks" almost daily, and improvement continued. The record reveals that after six months, the plaintiff was ready for surgery, but not amputation; and the tissue was in good health, bone and otherwise, when the plaintiff went to Duke.

[2] The defendant contends the plaintiff failed to comply with his obligation to notify the Industrial Commission and the employer of his selection of a different physician. In order for the defendant to be responsible for the costs of the substitute physician, the Industrial Commission must approve of the change. G.S. 97-25. There is no requirement that such approval must be in advance of the change—only that the change must be approved.

Dr. Klenner made claim, and the deputy commissioner and Full Commission approved the costs of medical care under the circumstances. We do not find an abuse of discretion here.

[3] The third question that must be answered concerns the nature of the Industrial Commission's jurisdiction. When an appeal is made from judgment entered by a trial court, such court loses jurisdiction with limited exceptions during the appeal. *Bowen v. Motor Co.*, 292 N.C. 633, 234 S.E. 2d 748 (1977); *West v. Reddick, Inc.*, 38 N.C. App. 370, 248 S.E. 2d 112 (1978).

The Industrial Commission is a quasi-trial court in this case, and lost its jurisdiction while the case was before this Court. However, this Court affirmed the award of the Commission for the payment of any additional medical treatment which will tend to lessen plaintiff's disability. That order still stands.

There was no reason to file claim with the Industrial Commission during appeal to this Court, or to notify such Commission that Dr. Klenner was substituted for the original doctors until further claim was made by him for approval by the Commission after the appeal was concluded.

After the deputy commissioner entered his order directing an award to the plaintiff on 12 June 1978, the employer sought a stay of award on 28 June 1978 so that Dr. Frank Bassett of Duke

University Medical Center could testify as to the ineffectiveness of Dr. Klenner's treatment. The deputy commissioner and Full Commission denied the request. The employer had his day in court. He should have taken action then.

For the reasons set out above, the decision of the Full Commission is

Affirmed.

Judge ERWIN concurs.

Judge VAUGHN dissents.

Judge VAUGHN dissenting.

I am not satisfied that the questions of "jurisdiction" and "emergency" on which the Commission based its decision are altogether relevant or dispositive of the case. At any rate, I am convinced that the award should be vacated and the matter remanded. The employer first learned that claimant was being seen by Dr. Klenner sixteen months after his treatment began. At the very least the employer should have the opportunity to offer evidence on whether all of the medical services for which they are now called upon to pay, more than $6,000.00, were reasonably required "to effect a cure or give relief and . . . tend to lessen the period of disability" as well as whether the cost for such services is reasonable. G.S. 97-25. As I view the record, they have been deprived of that opportunity. Moreover, the Commission should have made affirmative findings on these questions before entering the award.