An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1223

NORTH CAROLINA COURT OF APPEALS

Filed:  17 June 2014

TAMMY FLORENTZ as Guardian ad
Litem for TIMOTHY P. RHODES and
TAMMY FLORENTZ,
    Plaintiffs,

v.

JESSE GORE,
    Defendant.

Moore County
No. 12 CVS 1359

Appeal by plaintiff from order entered 31 May 2013 by Judge Patrice A. Hinnant in Moore County Superior Court.  Heard in the Court of Appeals 19 February 2014.

> *Van Camp, Meacham & Newman, PLLC, by Thomas M. Van Camp and William M. Van O'Linda, Jr., for plaintiff-appellant.*
>
> *Linda Reid Oldham for defendant-appellee.*

McCULLOUGH, Judge.

Plaintiff Tammy Florentz appeals from an order of the trial court granting defendant Jesse Gore's motion to dismiss plaintiff Tammy Florentz's individual claims of negligence and denying plaintiffs' motion to amend the complaint.  Based on the reasons stated herein, we affirm the order of the trial court.

## I.   Background

On 31 October 2012, plaintiffs Tammy Florentz as *guardian ad litem* for Timothy P. Rhodes ("Timothy") and Tammy Florentz ("Florentz") filed a complaint against defendant Jesse Gore alleging negligence. The complaint alleged that plaintiffs rented a home from defendant, located at 505 N. Ridge Crest Street in Pinebluff, North Carolina ("leased property"). Beginning in 2005, shortly after moving into the leased property, Timothy began developing "respiratory, gastrointestinal and neurological symptoms including, but not limited to, migraines, nausea and sinus infections." Plaintiffs discovered water leaks surrounding the fireplace, bathroom fixtures, and water heater. The water leaks caused significant water damage to the home. All leaks were reported to defendant. The water leak surrounding the fireplace was never resolved although in response to the complaints regarding the other leaks, defendant sent individuals to fix the leaks. These individuals failed to correct the water damage.

The complaint also alleged that "[a]s the water leaks continued, especially surrounding the fireplace, Tammy Florentz notified [defendant] of the persistent odor of mildew and mold. Additionally, Ms. Florentz reported the appearance and growth of mold surrounding the fireplace, bathroom and bedrooms of the

Leased Property." Despite her complaints to defendant, the mold, mildew, and water damage was not corrected by defendant and plaintiffs were forced to move from the leased property.

Plaintiffs allege that defendant was negligent in that he failed to maintain the leased property in a condition such that it would not have persistent water leaks, had a duty to correct the water leaks, water damage and mold and mildew growth within the leased property, failed to correct the mold and mildew conditions within the leased property, and was otherwise negligent as discovered through this litigation. As a direct and proximate result of defendant's negligence, plaintiffs alleged that Timothy had suffered severe physical injuries and that plaintiffs incurred medical bills and endured pain and suffering.

On 4 January 2013, defendant filed an "Answer, Counterclaim, and Motion to Dismiss." Defendant requested that the trial court dismiss plaintiffs' action for failure to state a cause of action upon which relief may be granted pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Defendant's affirmative defenses included the following: equitable estoppel; contributory negligence; assumption of risk; intervening circumstances; payment, accord and settlement,

and/or setoff. Defendant also filed a counterclaim against plaintiffs for negligent misrepresentation.

On 6 March 2013, plaintiff filed a "Reply to Counterclaim."

Following a hearing held during the 13 May 2013 session of Moore County Civil Superior Court, the trial court entered an "Order Dismissing Individual Claims of Tammy Florentz" on 31 May 2013. The trial court made the following pertinent findings of fact:

> 1. Plaintiffs filed a Complaint against the Defendant on October 31, 2012[.] . . . .
>
> . . . .
>
> 3. Plaintiffs' Complaint alleged in paragraph 4 "Beginning in 2005, Plaintiffs resided in the Leased Property, shortly after moving into the property Timothy developed respiratory, gastrointestinal and neurological symptoms, including, but not limited to, migraines, nausea and sinus infections."
>
> . . . .
>
> 6. Defendant's Answer and Counterclaim responded in paragraph 7 "It is admitted that the Plaintiff, Tammy Florentz, reported a mold issue to Defendant in February of 2007. Defendant immediately instructed Plaintiff to vacate the premises so that the issue could be addressed."
>
> 7. Defendant's Counterclaim alleged in paragraph 1 "In February of 2007, Plaintiff, Tammy Florentz, notified

Defendant for the first time that she had found mold in the residence she rented from the Defendant."

8. In Plaintiff's Reply to Counterclaim, Plaintiff responds to Defendant's allegation as follows: "The allegations set forth in paragraph 1 of the Counterclaim are admitted, upon information and belief."

9. N.C. Gen. Stat. [§] 1-52 sets forth a three year statute of limitation applicable to the alleged claims of the Plaintiff, Tammy Florentz.

10. Pursuant to N.C. Gen. Stat. [§] 1-52, the cause of action for Plaintiff, Tammy Florentz, began to accrue when the bodily harm became "apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs."

11. Plaintiff alleges that her son began having medical problems shortly after moving into the rental property in 2005.

12. Plaintiff further alleges that she and her son moved out of the rental property in 2007 upon the advice of Timothy's physicians.

13. The allegations in paragraph 9 of Plaintiffs' Complaint alleges a clearly apparent cause of action as of time Plaintiff and her minor son moved out of the rental property which has been shown to be in 2007.

14. The three year statute of limitation set forth in N.C. Gen. Stat. [§] 1-52(16) and applicable to the causes of action of Plaintiff, Tammy Florentz, has expired.

15. That the statute of limitations bars all claims of Tammy Florentz in her individual capacity as a Plaintiff in this action.

6. That the Plaintiff, Timothy P. Rhodes, is a minor child, and said disability prevents his causes of action from accruing.

The trial court granted defendant's motion to dismiss the individual claims of Florentz. Timothy's claims against defendant remain intact.

The 31 May 2013 order also noted that on 16 May 2013 plaintiffs' counsel made an oral motion to amend the complaint. After hearing from both attorneys, plaintiffs' motion to amend the complaint was denied.

From the 31 May 2013 order, Florentz appeals.

## II. Discussion

On appeal, plaintiff argues that the trial court erred by (A) dismissing Florentz's individual claims against defendant and (B) denying plaintiffs' motion to amend the complaint. However, as a preliminary matter, we must first address whether this interlocutory appeal is properly before us for review.

"An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and

determine the entire controversy." *Wilfong v. N.C. DOT*, 194 N.C. App. 816, 817, 670 S.E.2d 331, 332 (2009) (citation omitted). "[T]he appellant has the burden of showing this Court that the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits." *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994).

Here, Florentz concedes that the appeal is interlocutory, but argues that there is a risk of inconsistent verdicts absent immediate appellate review. We agree.

Our Court has held that a substantial right is affected when "(1) the same factual issues would be present in both trials and (2) the possibility of inconsistent verdicts on those issues exists." *Estate of Redding v. Welborn*, 170 N.C. App. 324, 328-29, 612 S.E.2d 664, 668 (2005) (citation omitted). Because the same factual issues would be present in two separate trials, and because Florentz's claims against defendant are derivative of Timothy's claims against defendant, there is a risk of separate trials on the same issues and a risk of inconsistent verdicts. Thus, we proceed to the merits of Florentz's appeal.

A.  <u>Motion to Dismiss</u>

First, Florentz argues that the trial court erred by granting defendant's 12(b)(6) motion when it considered matters outside of the complaint.

In the case *sub judice*, the first affirmative defense in defendant's 12(b)(6) motion was that the three year statute of limitations set out in N.C. Gen. Stat. § 1-52 barred any recovery by Florentz. In its 31 May 2013 order, the trial court found that plaintiffs' cause of action began to accrue in February of 2007 by taking into consideration defendant's 4 January 2013 "Answer, Counterclaim, and Motion to Dismiss" and plaintiffs' 6 March 2013 "Reply to Counterclaim." Accordingly, the trial court held that plaintiffs' 31 October 2012 complaint was filed after the expiration of the applicable statute of limitations.

Because the trial court considered defendant's answer and counterclaim, in addition to plaintiffs' reply to defendant's counterclaim, the trial court effectively converted defendant's 12(b)(6) motion to dismiss into a Rule 12(c) motion for judgment on the pleadings. *See S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC,* 189 N.C. App. 601, 617, 659 S.E.2d 442, 454 (2008). "To determine whether the trial court erred in granting judgment on the pleadings under Rule 12(c) of the North Carolina Rules of

Civil Procedure in favor of [defendant], we apply *de novo* review." *Id.* (citation omitted).

N.C. Gen. Stat. § 1-52(16) provides that the statute of limitations for plaintiffs' claims are three years and that

> [u]nless otherwise provided by statute, for personal injury or physical damage . . . referred to in G.S. 1-15(c), shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. . . .

N.C. Gen. Stat. § 1-52(16) (2013) (emphasis added).

Our review indicates that on 31 October 2012, plaintiffs filed a complaint alleging, *inter alia*, the following:

> 4. Beginning in 2005, Plaintiffs resided in the Leased Property, shortly after moving into the property Timothy developed respiratory, gastrointestinal and neurological symptoms including, but not limited to, migraines, nausea and sinus infections.
>
> 5. Not long after the moving into the Leased Property the Plaintiff discovered a water leak surrounding the fireplace and reported this leak to the Defendant. . . .
>
> . . . .
>
> 7. As the water leaks continued, especially surrounding the fireplace, Tammy Florentz notified [defendant] of the persistent odor of mildew and mold. Additionally, Ms. Florentz reported the appearance and growth of mold surrounding the fireplace,

> bathroom and bedrooms of the Leased Property.
>
> 8. Despite Ms. Florentz's complaints the mold, mildew and water damage was not corrected by [defendant].
>
> 9. Ultimately, upon the [advice] of Timothy's physicians, Timothy and [Florentz] were forced to move from the Leased Property.

In defendant's "Answer, Counterclaim, and Motion to Dismiss," defendant raises a statute of limitations defense, arguing that N.C. Gen. Stat. § 1-52 barred any recovery by Florentz. In paragraph 7 of defendant's answer, defendant admits that Florentz reported a mold issue to defendant in February of 2007. In paragraph 1 of defendant's counterclaim, defendant alleges that "[i]n February of 2007, [Florentz] notified Defendant for the first time that she had found mold in the residence she rented from the Defendant." In plaintiffs' "Reply to Counterclaim," plaintiffs stated that "[t]he allegations set forth in paragraph 1 of the Counterclaim are admitted, upon information and belief."

Based on the foregoing, we find that in 2005, Florentz was aware of the mold and mildew issues existing in the leased property and was aware that Timothy had begun experiencing physical problems. As alleged in plaintiffs' complaint, Florentz was aware of the connection between the mold and mildew

issues and the bodily injury to Timothy based on the advice of Timothy's physicians to move out of the leased property. Florentz heeded this advice and moved from the leased property. Defendant's "Answer, Counterclaim and Motion to Dismiss" alleges that plaintiffs moved out of the leased property in 2007 and Florentz concedes this date in her brief. Therefore, we conclude that as of 2007, Timothy's alleged bodily harm became apparent or ought to reasonably have become apparent to Florentz, triggering the cause of action to accrue.

Because plaintiffs' complaint was not filed until 31 October 2012, clearly beyond the three year statute of limitations, the trial court did not err by concluding that Florentz's individual claims against defendant were barred. Thus, we hold that the trial court properly granted defendant's 12(b)(6) motion and dismissed Florentz's individual claims as untimely.

### B. Motion to Amend the Complaint

In her next argument, Florentz contends that the trial court erred by denying her motion to amend the complaint where it gave no "justifying reason for the denial."

The standard of review for a motion to amend a complaint "requires a showing that the trial court abused its discretion.

. . . Proper reasons for denying a motion to amend include undue delay, unfair prejudice, bad faith, *futility of amendment*, and repeated failure of the moving party to cure defects by other amendments." *Revolutionary Concepts, Inc. v. Clements Walker PLLC,* __ N.C. App. __, __, 744 S.E.2d 130, 136 (2013) (citation omitted) (emphasis added). "When the trial court states no reason for its ruling on a motion to amend, this Court may examine any apparent reasons for the ruling." *Williams v. Owens*, 211 N.C. App. 393, 394, 712 S.E.2d 359, 360 (2011) (citation omitted).

It is well established that "[i]n deciding if there was undue delay, the trial court may consider the relative timing of the proposed amendment in relation to the progress of the lawsuit." *Draughon v. Harnett Cnty. Bd. of Educ.*, 166 N.C. App. 464, 467, 602 S.E.2d 721, 724 (2004) (citation omitted). In *Wilkerson v. Duke Univ.*, __ N.C. App. __, __, 748 S.E.2d 154, 161 (2013), the trial court denied the plaintiff's motion to amend his complaint based on undue delay and undue prejudice. After finding that the plaintiff's motion to amend was delivered to the defendants thirteen months after he filed the initial complaint and only five days prior to the hearing on the defendants' motion for summary judgment, our Court held that

"[w]e cannot say the trial court abused its discretion in denying plaintiff's motion to amend for undue delay and undue prejudice." *Id.* In the case before us, the trial court denied plaintiffs' motion to amend the complaint without making any specific findings of fact supporting the court's denial. Plaintiffs had requested to amend the complaint to state that Florentz "learned of the defendant's negligence on or about August 19 of 2011." We note that plaintiffs filed their complaint on 31 October 2012. Defendant filed its "Answer, Counterclaim and Motion to Dismiss" on 4 January 2013. Plaintiffs filed their "Reply to Counterclaim" on 6 March 2013. Similar to the reasoning stated in *Wilkerson*, we observe that plaintiffs' motion to amend the complaint was made over six months after they filed the initial complaint and the motion was made orally at the 16 May 2013 hearing on defendant's motion to dismiss. In light of these facts, we defer to the trial court's discretionary determination to deny plaintiffs' motion to amend the complaint.

## III. Conclusion

Where the trial court did not err by dismissing Florentz's individual claims against defendant and by denying plaintiffs'

motion to amend the complaint, we affirm the 31 May 2013 order of the trial court.

Affirmed.

Judge HUNTER, Robert C. concurs.

Judge GEER dissents.

Report per Rule 30(e).

NO. COA13-1223

NORTH CAROLINA COURT OF APPEALS

Filed: 17 June 2014

TAMMY FLORENTZ as Guardian ad
Litem for TIMOTHY P. RHODES
and TAMMY FLORENTZ,
        Plaintiffs,

    v.                                  Moore County
                                        No. 12 CVS 1359
JESSE GORE,
        Defendant.


        GEER, Judge dissenting.


        This appeal is from an interlocutory order. Because the trial court did not certify the order for immediate review under Rule 54(b) of the Rules of Civil Procedure and because I do not believe that the appellant has shown the existence of a substantial right, I believe that we lack jurisdiction to hear the appeal and, therefore, would dismiss the appeal.

        As our Supreme Court has held, "[i]n general, a party may not seek immediate appeal of an interlocutory order." *Dep't of Transp. v. Rowe*, 351 N.C. 172, 174, 521 S.E.2d 707, 709 (1999). However, "[i]nterlocutory orders may be appealed immediately under two circumstances. The first is when the trial court certifies [under Rule 54(b)] no just reason exists to delay the appeal after a final judgment as to fewer than all the claims or

parties in the action. The second is when the appeal involves a substantial right of the appellant and the appellant will be injured if the error is not corrected before final judgment." *N.C. Dep't of Transp. v. Stagecoach Vill.*, 360 N.C. 46, 47-48, 619 S.E.2d 495, 496 (2005) (internal citation omitted).

In this case, the trial court did not include a Rule 54(b) certification in its order allowing the motion to dismiss Ms. Florentz' claims. As a result, this Court has jurisdiction over this appeal only if "'the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits.'" *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994) (quoting *S. Uniform Rentals, Inc. v. Iowa Nat'l Mut. Ins. Co.*, 90 N.C. App. 738, 740, 370 S.E.2d 76, 78 (1988)).

Ms. Florentz argued and the majority opinion agrees that a substantial right exists because, as the majority explains, "the same factual issues would be present in two separate trials, and because Florentz's claims against defendant are derivative of Timothy's claims against defendant, there is a risk of separate trials on the same issues or a risk of inconsistent verdicts." However, the very fact that Ms. Florentz' claims are derivative eliminates any possibility of inconsistent verdicts.

While I have not found a case addressing the ability to appeal an interlocutory order dismissing a derivative claim, this Court has addressed our jurisdiction in the analogous context of derivative liability. In *Long v. Giles*, 123 N.C. App. 150, 152, 472 S.E.2d 374, 375 (1996), the trial court entered summary judgment for a defendant employer sued based on a *respondeat superior* theory, but left pending claims against the defendant employee.

In holding that no substantial right existed because there could be no possibility of inconsistent verdicts, this Court explained:

> A finding of liability against defendant [employer], as [the individual defendant's] employer, is only possible if [the defendant employee's] estate is found liable, and the injuries arose out of and in the course of his employment. In other words, defendant [employer's] liability is derivative of [defendant employee's] liability, and the primary claim against the [defendant employee's] estate must first be determined before any claim against [defendant employer] is possible. Only if the court determines that plaintiffs may recover from the estate can their right to recover from defendant [employer] be affected by the summary judgment.
>
> If plaintiffs do not recover against [the defendant employee's] estate, they cannot seek to recover against defendant [employer] under a *respondeat superior* theory, and an appeal of summary judgment would be moot. Moreover, if summary

judgment for defendant [employer] is in error, plaintiffs can preserve their right to complain of the error by a duly entered exception, and may appeal after a successful judgment on the primary claims against [the defendant employee's] estate.

*Id.*

The Court, therefore, concluded in *Long*: "Because the issue of defendant [employer's] liability is derivative of a finding of liability against [the defendant employee's] estate, there is no possibility of inconsistent verdicts, and no substantial right is involved that would make an appeal of summary judgment appropriate at this time." *Id.* at 153, 472 S.E.2d at 375-76. *Accord Florek v. Borror Realty Co.*, 129 N.C. App. 832, 835, 501 S.E.2d 107, 108 (1998) (holding that claims based on principal and agent relationship gave rise to "no possibility of inconsistent verdicts as any liability on the part of [the principal] hinges upon a finding of liability on the part of defendant [agents]").

The reasoning in *Long* applies equally to this case. Ms. Florentz may recover *only if* the claims brought on behalf of her son succeed. *See Holt v. Atl. Cas. Ins. Co.*, 141 N.C. App. 139, 142, 539 S.E.2d 345, 347 (2000) (concluding that parent's "claim for [injured minor's] medical expenses is derivative in nature"). If Ms. Florentz' son does not prevail on his claims,

then Ms. Florentz will not be allowed to relitigate defendant's liability to her son in order to recover medical expenses incurred for her son.

In other words, if Ms. Florentz were required to wait to appeal the order dismissing her claims, a judgment entered for defendant with respect to her son's claims would moot Ms. Florentz' appeal. On the other hand, if Timothy were to prevail, then Ms. Florentz could still appeal and, if successful, the only issues on remand would be limited to her entitlement to recover medical expenses. There would be no need to relitigate defendant's liability for Ms. Florentz' son's physical injuries.

For the reasons set out in *Long* and *Florek*, I would hold that no risk of inconsistent verdicts exists and that Ms. Florentz has failed to demonstrate the existence of a substantial right that she would lose in the absence of an immediate appeal. As noted in *Florek*, I believe that dismissal of the appeal is "in accordance with the procedural rules which are designed to promote[] judicial economy by avoiding fragmentary, premature and unnecessary appeals and permit[] the trial court to fully and finally adjudicate all the claims among the parties before the case is presented to the appellate

court." 129 N.C. App. at 836, 501 S.E.2d at 109 (internal quotation marks omitted).